942 F.2d 794
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Junior George BROWN, Defendant-Appellant.
 No. 88-5402.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 16, 1991.*
Decided Aug. 22, 1991.
 
 1
 Before WILLIAM A. NORRIS and DAVID R. THOMPSON, Circuit Judges, and SAMUEL P. KING, District Judge**
 
 
 2
 MEMORANDUM***
 
 
 3
 Junior George Brown appeals his conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and his conviction for being a deported alien found in the United States in violation of 8 U.S.C. § 1326. He also appeals the denial of his motion to suppress evidence seized pursuant to a search warrant. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.
 
 FACTS AND PROCEEDINGS
 
 4
 On April 21, 1988, several members of the Los Angeles County Sheriff's Department went to a residence to execute a search warrant. Deputy Sheriff Roger Silos testified that after they arrived, he approached the house in plain clothes. He knocked on the front door, which was opened by a woman. At this time, the other deputies approached the house clad in their sheriff's uniforms. Deputy Silos could see Brown inside the house. Brown appeared startled at the sight of the deputies. He began to run down a hallway toward the back of the house. Deputy Silos gave chase. He could hear Brown screaming, "Get the gun, the gun." Deputy Silos and two other deputies pursued Brown through a bedroom and into a bathroom. During this time, Deputy Silos heard Brown also yelling, "Shoot 'em, man. Shoot 'em." Deputy Silos testified that he and the other deputies chased Brown into the bathroom, where he found Brown crouched down holding a gun. Deputy Sheriff Ken Duffey testified that, although he did not hear Brown say anything about a gun or shooting anyone, he clearly saw Brown crouched down in the bathroom holding a gun. The deputies tackled Brown and knocked the gun into the bathtub. They arrested Brown and confiscated the gun.
 
 
 5
 Brown's version of the events differs considerably. Brown testified that he was in the bathroom when he heard people running in the house. He testified that he encountered the authorities initially while he was still in the bathroom. He swore that he never made any statements like "get the gun" or shoot 'em." And he claimed that he saw the gun for the first time when the deputies found it in a bathroom cabinet. The gun was never tested for fingerprints.
 
 
 6
 It was determined at Brown's trial that he had a felony record. It was also determined that a warrant of deportation had issued for an alien, one Woodstock, who was deported from this country on September 4, 1987, to Kingston, Jamaica. A fingerprint expert testified that the thumbprint on the deportation warrant for Woodstock matched the thumbprint on Brown's arrest card, and that they were one and the same person. Finally, certification was received into evidence indicating that Woodstock had not applied for legal reentry into the United States.
 
 DISCUSSION
 
 7
 Brown first challenges his convictions on the ground of insufficiency of the evidence. In considering his challenge we view the evidence in the light most favorable to the government. United States v. Patterson, 820 F.2d 1524, 1525 (9th Cir.1987). We will not reverse the conviction if there is substantial evidence upon which a jury could have found the defendant guilty beyond a reasonable doubt. Id. We affirm the convictions on both counts.
 
 
 8
 In challenging his conviction for being a felon in possession of a firearm, Brown contends the government failed to prove that he possessed a gun. Brown points to the fact that the gun was not tested for fingerprints. He also argues that the testimony of Deputy Silos was discredited by the fact that parts of Silos' testimony could not be corroborated by Deputy Duffey. It is, however, the jury's responsibility to "determine the credibility of the witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." Id. at 1526. The jury could have plausibly rejected Brown's testimony that the first time he saw the gun was when the deputies found it in a bathroom cabinet. Accordingly, there was substantial evidence from which a reasonable jury could conclude that Brown possessed the gun.
 
 
 9
 In appealing his conviction for being a deported alien found in the United States, Brown insists that he is not Woodstock and that the government failed to prove that he had been deported.
 
 
 10
 When the government establishes that a warrant of deportation has been issued, as here, it sufficiently shows that an alien has in fact been deported. United States v. Farias-Arroyo, 528 F.2d 904, 904-05 (9th Cir.1975). Additionally, the jury could accept as true the expert opinion by the fingerprint specialist that Brown and the deported alien, Woodstock, were one and the same person. Therefore, the evidence was sufficient for a rational jury to conclude that Brown had been deported.
 
 
 11
 Brown also appeals the denial of his motion to suppress the gun seized pursuant to the search warrant. He contends that the warrant lacked probable cause and that the warrant was stale.
 
 
 12
 We will not reverse a determination of probable cause absent a finding of clear error. United States v. Castillo, 866 F.2d 1071, 1076 (9th Cir.1988). Our duty is to ensure that there is a substantial basis for concluding that probable cause existed and that, under the totality of the circumstances, the search warrant was predicated on the fair probability that contraband was located at a particular location. Illinois v. Gates, 462 U.S. 213, 238-39 (1983), reh'g denied, 463 U.S. 1237 (1983).
 
 
 13
 Based on the totality of the circumstances, the affidavit supporting the search warrant contained information sufficient to establish the fair probability that illegal drugs were to be found at "Mike's" residence. The affidavit detailed that a confidential informant contacted Deputy Silos with the tip that a "Mike" was selling cocaine from his residence. Apparently, the informant had purchased cocaine from "Mike" within the last several weeks. The informant described "Mike's" modus operandi as consisting of taking a telephone call in order to set up a cocaine buy. Deputy Silos subsequently corroborated the tip by monitoring a telephone conversation between the CI and "Mike," whereby the informant phoned "Mike" and "Mike" agreed to sell the informant an ounce or so of "coke." Deputy Silos established further corroboration by verifying the appearance and location of the residence and a vehicle purported by the informant to be "Mike's." Deputy Silos also confirmed that a "Michael" subscribed to utilities at that address and that a "Michael" used that telephone number at that address. Finally, Deputy Silos offered his expert opinion that "Mike" was selling cocaine and would be in possession of cocaine upon the execution of the search warrant. Hence, we find that, under the totality of the circumstances, the information contained in the affidavit established a substantial basis for concluding that probable cause existed.
 
 
 14
 Brown finally argues that the affidavit was too stale to establish probable cause that illegal drugs would be found at "Mike's" residence on the day of the seizure, a full ten days after the date of the tip. The affidavit established the existence of ongoing criminal activity, however, which diminishes the significance of the ten-day time lag between the date of the tip and the day of the seizure. See United States v. Hernandez-Escarsega, 886 F.2d 1560, 1566 (9th Cir.1989) (continuous nature of crime diminishes significance of twenty-month time lag between acts described in affidavit and issuance of warrant), cert. denied, 110 S.Ct. 3237 (1990). Hence, the affidavit was not too stale to establish probable cause that illicit drugs were located at "Mike's" address ten days after the tip.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for disposition without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 Hon. Samuel P. King, Senior United States District Court Judge for the District of Hawaii, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3